## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JOSE G PRADO | § | CASE NO: 01-23670 |
|     Debtor. | § | |
| | § | CHAPTER 13 |
| | § | |
| JOSE G PRADO | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-7028 |
| | § | |
| CASH AMERICA ADVANCE, INC. | § | |
|     Defendant. | § | |

### MEMORANDUM OPINION

Plaintiff, the Debtor, filed this adversary proceeding seeking damages, sanctions and attorneys fees for violation of 11 U.S.C. § 362. Cash America seeks dismissal of this adversary proceeding, or in the alternative, summary judgment. Cash America's requested relief is principally based on the legal premise that its conduct was not governed by the automatic stay. On January 23, 2006, the Court held an initial conference in this matter. The Court ordered briefing on the issue of whether § 362 is applicable to this matter. For the reasons stated below, the Court determines there is a colorable basis under § 362 for the Plaintiff's complaint.

### Background

On November 1, 2001, the Debtor filed a chapter 13 petition. Prior to filing bankruptcy, the Debtor had pledged various items of personal property (the "Property") to the Defendant, Cash America[1] to secure loans made by Cash America. Cash America is a pawnbroker. The collateral is pledged by a "pawn ticket" that contains the parties' loan agreement and collateral

---

[1] The Defendant, Cash America Advance, Inc., is formerly known as Cash America International, Inc. Defendant further does business as Cash America Pawn. For purposes of this Order, the Defendant is generally referred to as Cash America.

pledge.   The Debtor maintains that he continued to renew each pawn ticket as it matured by extending the maturity dates by written agreement so that all of his loans were current when he filed bankruptcy.   On or after November 26, 2001, the Debtor claims that he stopped making payments to Cash America in reliance on statements by the assistant store manager that he could suspend payments until further notice and that his Property would be protected by Cash America until his bankruptcy case was resolved.   The Debtor further contends that on or about February 2, 2002, Cash America began selling some items of the Property that it held as collateral in violation of § 362.   Cash America does not dispute that it sold some of the Property.   However, Cash America argues that 11 U.S.C. § 362 did not preclude the sale of the Property since the Debtor did not timely exercise his redemption[2] rights.

On May 10, 2002, the Court granted the Debtor's motion to incur debt and authorized him to borrow approximately $12,500 from his brother to pay off Cash America.   The Debtor paid Cash America for the Property that remained at Cash America's local store.   It is undisputed that the Debtor was unable to pay for and receive some items since they had been sold and were not in the possession of Cash America when he attempted to recover them.

On February 21, 2003, the Debtor filed an adversary proceeding against Cash America related to these pawn transactions.   The proceeding was voluntarily dismissed on July 19, 2004. On October 18, 2004, the Debtor filed a second adversary proceeding against Cash America based on these pawn transactions.   This proceeding was dismissed without prejudice on May 13, 2005 for insufficient service.   On December 16, 2004, the Debtor's underlying bankruptcy case

---

[2]  The parties have generally referred to the Debtor's right to recover the collateral held by the pawn shop as a right to "redeem" the collateral or a right of "redemption."   For convenience, the Court will adopt the use of these terms. The terms should not be confused, however, with the meaning of a redemption as a right to repurchase property, title of which has already been transferred to a secured party.

was dismissed.  On October 31, 2005, the Debtor filed this adversary proceeding based on the same transactions.

Cash America defends the Debtor's claims on the basis that, among other defenses, § 362(a) is inapplicable to extend the Debtor's rights with regard to unredeemed property.  Cash America argues that the redemption period expired before the Debtor attempted to recover the pledged Property so that the Property left the bankruptcy estate and vested in Cash America prior to its sale of any of the collateral.  Cash America further asserts that, because the Debtor's case was dismissed on December 17, 2004, this matter is not properly before this Court.

Because the substance of this matter rests on the applicability of § 362(a), the Court required briefing on the issue in order to determine whether the Court has a colorable basis for subject matter jurisdiction.   When a lawsuit asserts that one of a debtor's fundamental bankruptcy protections was violated by a creditor, the Court's subject matter jurisdiction continues after the dismissal of the case.  *See In re Bradley*, 989 F.2d 802, 804 (5th Cir. 1993).  Indeed, the Court has no discretion with respect to whether it will consider matters that are within its subject matter jurisdiction.  *Id.*  The Court's duty to consider cases within its subject matter jurisdiction is unflagging.  *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461 (1964); *Great Atlantic and Pacific Tea Co. Inc. v. Gillis,* 78 Fed.Appx. 329 (5th Cir. 2003).

**Analysis**

The principal issue raised by Cash America is whether the period in which the Debtor may recover the collateral is stayed by § 362(a) or only extended for a limited period as provided in § 108(b).  Initially, the Court must determine whether § 362(a) is applicable.  Section 362(a) provides, in relevant part, that the filing of a petition operates as a stay of:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; …

11 U.S.C. § 362(a).

Because 362(a) applies only to acts taken with respect to property of the estate or property of the debtor, the Court must first establish the property interests in this bankruptcy proceeding.

Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). State law creates and determines property rights in bankruptcy proceedings. *Butner v. United States*, 440 U.S. 48, 55 (1979). Upon filing the bankruptcy petition, any rights the Debtor had under the pawn transaction became property of his bankruptcy estate. Consequently, if the Debtor's right to recover the collateral had not terminated pre-petition, this legal or equitable interest in the Property became property of the estate.

The Texas Pawnshop Act (the "Act") governs and regulates the business of pawnbrokers and pawn transactions in Texas. TEX. FIN. CODE § 371.001, *et seq.* The Act characterizes a pawnbroker as a secured party. TEX. FIN. CODE § 371.003.[3] The Act provides that "[p]ledged goods not redeemed on or before the 60th day after the original maturity date *may*, at the option

---

[3] The Act defines a "pawnbroker" as "a person engaged in the business of (A) lending money on the security of pledged goods; or (B) purchasing goods on condition that the goods may be redeemed or repurchased by the seller for a fixed price within a fixed period." TEX. FIN. CODE § 371.003(6) (1997). The Act defines "pawn transaction" as "the pledging with a pawnbroker of a single item of goods as security for a loan of money." *Id*. at § 371.003(8). The pawn tickets in this case reflect that the transactions between Cash America and the Debtor were loan transactions and that the pledged goods served as security for the transactions. The Court expresses no view as to whether the outcome of this decision would be different if the pawnbroker initially purchased the goods.

of the pawnbroker, be forfeited to the pawnbroker."[4]  *Id.* at § 371.169(c) (1997) (emphasis added).  This language indicates that the forfeiture of the pawned property is not automatic upon the expiration of the 60-day grace period.  *Cf. In re Canney,* 284 F.3d 362, 373 (2d Cir. 2002) (under Vermont law, when extended period for redemption lapsed without redemption, full title vests automatically with the mortgagee); *In re Dunlap*, 158 B.R. 724, 728 (M.D. Tenn. 1993) (under Tennessee law, debtor's interest in pawned goods expires immediately upon expiration of statutory redemption period).[5]  Instead, redemption rights under Texas law are more extensive since Texas law requires an affirmative act by the pawnshop before the ownership interest transfers from a debtor to the pawnshop.  *Cash Am. Pawn, L.P. v. Murph*, 209 B.R. 419, 421 (E.D. Tex. 1997).  In particular:

> Documentation of the date that pledged goods have been forfeited and have become the property of the pawnshop must be made in the numerical pawn ticket file or in the electronic records. When the option is exercised to take pledged goods as the pawnshop's property, the property is not eligible to be returned to pledged goods status until another disposition of the property is made (e.g., sale, layaway). If goods have not been taken into inventory and documented, the pawn transaction is still considered an open pawn transaction even if the grace period has expired. The pledged goods on any open pawn transaction may be redeemed by payment of the amount financed and pawn service charges accrued to the actual date of redemption.

---

[4] Section 371.169 was amended effective September 1, 2001, to shorten the grace period from 60 days to 30 days. TEX. FIN. CODE § 371.169 (2001).  The evidence before the Court shows that each of the pawn transactions in this matter was originally entered prior to September 1, 2001.

[5] Tennessee law provides:

> If the pledgor fails to redeem the pledged goods within thirty (30) days after the maturity date of the pawn transaction, the pledgor shall thereby forfeit all right, title and interest of, in and to the pledged goods to the pawnbroker, who shall thereby acquire an absolute title to the pledged goods and the debt becomes satisfied, and the pawnbroker shall have the authority to sell or dispose of the unredeemed pledged goods as the pawnbroker's own and may sell the unredeemed pledged goods.

TENN. CODE ANN. § 45-6-211(e).

7 TEX. ADMIN. CODE § 85.414 (2005).[6]

Pursuant to this regulation, when the 60-day grace period has expired, a debtor's right to pay the debt and recover the collateral remains open until the pawnshop affirmatively documents that the goods have been forfeited.  *Murph*, 209 B.R. at 421.  Accordingly, the Debtor's interest in pawned goods becomes property of the bankruptcy estate and is protected by the automatic stay unless both of the following occurred pre-petition: (1) the 60-day  grace period expired; and (2) the pawnshop documented the date the pledged goods were forfeited and taken into inventory.[7]

The Debtor argues that the period in which he could recover the collateral remained open when he filed bankruptcy, and therefore Cash America willfully violated the automatic stay when it sold some of the Property.  Cash America contends that the Debtor failed to timely redeem the Property.  By failing to timely redeem the Property, Cash America argues that it ceased to be part of the bankruptcy estate and full title vested in Cash America so that is was no longer subject to § 362(a).  Thus, it is necessary to consider when the Debtor's rights terminated.

---

[6] This regulation was promulgated by the Consumer Credit Commissioner who has statutory authority to adopt regulations to enforce the Act.  TEX. FIN. CODE § 371.006.  Section 85.414 was adopted to be effective October 1, 2000.  Prior to October 1, 2000, the corresponding regulation provided:

> Record of forfeiture and redemption or renewal options. When a pawnbroker exercises his option to take pledged goods as his property, the pawnbroker must make a notation of such action and the date of action on the fourth part of the pawn ticket. If a pawn ticket has not been so marked, the related loan is considered open even if the grace period has expired. The pledged goods on any unrestricted open loan may be redeemed by payment of the amount financed and pawn service charges accrued to the actual date of redemption, a loan may be renewed by payment of pawn service charges accrued to the date of renewal, or a loan may be extended.

7 TEX. ADMIN. CODE § 85.21(a)(1)(E) (1994) (repealed; current version at 7 TEX. ADMIN. CODE § 85.414 (2005)).

[7] Although not addressed by either party, the Property may also be protected by the automatic stay if it was claimed as exempt by the Debtor.  Property that is properly claimed as exempt is no longer part of the bankruptcy estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992).  In order to claim an exemption, a debtor must file a list of property that the debtor claims as exempt under § 522(b).  11 U.S.C. § 522(l).  Absent timely objections by a party in interest, the property claimed as exempt is exempt.  *Id.*  The Debtor filed a list of exemptions that listed some of the Property as exempt, and no objections were timely filed.  Consequently, the exempted Property became property of the Debtor.  Section 362(a)(5) stays any act to create or enforce a lien against property of the debtor to the extent that the lien secures a pre-petition claim.  11 U.S.C. § 362(a)(5).

***Redemption Rights and the Bankruptcy Code***

As an initial matter, the Court must determine whether § 362(a) tolls the period in which goods may be recovered from a pawnshop or whether the more specific extension of time provided in § 108(b) governs the period of redemption. Although many courts have addressed the issue, neither the Fifth Circuit nor any court in the Southern District of Texas have done so.

Section 108(b) provides:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Accordingly, where the applicable recovery period remains open upon the filing of a bankruptcy petition, § 108(b) extends the recovery period for either 60 days from the filing of the bankruptcy petition or until the end of the state law recovery period, whichever is longer.

The relationship between state law redemption rights and the Bankruptcy Code has been addressed by many courts. Although a handful of courts hold that § 362(a) applies to toll the duration of a debtor's redemption period, the majority view holds that § 108(b) controls the tolling of statutory redemption rights in bankruptcy. *See*, *e.g.*, *In re Canney*, 284 F.3d at 372; *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1059 (3d Cir.

7

1988); *In re Tynan*, 773 F.2d 177, 179 (7th Cir. 1985); *In re Glenn*, 760 F.2d 1428, 1440 (6th Cir. 1985); *Johnson v. First Nat'l Bank*, 719 F.2d 270, 278 (8th Cir. 1983). This Court agrees.

First, § 362 is a general provision that indefinitely tolls actions taken against the debtor whereas § 108(b) specifically deals with redemption periods. It is well established that a specific statutory provision controls over more general provisions. *Kirby Corp. v. Pena*, 109 F.3d 258, 270 (5th Cir. 1997). Second, § 362(a) applies to stay any "acts" or "proceedings" against the debtor. 11 U.S.C. § 362(a). A principal purpose of the stay is to provide the debtor with breathing room from his creditors. *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987). It would be a stretch to conclude that the mere passing of time is an act or proceeding against the debtor intended to be stayed by § 362(a). *See e.g.*, *In re Tynan*, 773 F.2d 177, 180 (7th Cir. 1985) (citing *In re Petersen*, 42 B.R. 39, 41 (Bankr. D. Or. 1984)). Finally, the legislative history of § 108(b) indicates that it was designed to "permit the trustee, when he steps into the shoes of the debtor, an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights." S. REP. NO. 95-989, at 30 (1978). If § 362(a) were intended to toll such periods, § 108(b) would be superfluous. Accordingly, this Court adopts the view that § 362(a) does not toll the running of statutory redemption periods, and that statutory redemption periods are only extended to the extent allowed by § 108(b).

In order for § 108(b) to operate to extend the Debtor's right to recover the collateral, the Debtor must have been able to exercise the right at the time his petition was filed. The parties dispute whether the Debtor filed bankruptcy prior to the expiration of the state redemption period.[8] Cash America argues, however, that even assuming that the Debtor's right of

---

[8] Because the Court requested initial briefing on the legal issue of whether § 362 is applicable to this adversary proceeding, a factual record has not yet been developed.

redemption remained open when he filed bankruptcy, he was required to redeem the Property within 60 days of the filing of bankruptcy.  Because the Debtor failed to redeem the property by January 1, 2002, Cash America argues that the bankruptcy estate lost any rights it had in the Property, and therefore the automatic stay no longer applied to preclude Cash America from selling the Property in order to recoup the amounts paid to the Debtor when the Property was pawned.

This argument is lacking.  It is true that many cases have held that a debtor's right of redemption extends no more than 60 days from the filing of a petition.  *See*, *e.g.*, *In re Jackson*, 133 B.R. 541, 546-47 (Bankr. W.D. Okla. 1991); *In re Hand*, 52 B.R. 65, 66 (Bankr. M.D. Fla. 1985).  However, in these cases, the remaining applicable redemption period under state law was less than 60 days.  Section 108(b) makes clear that, upon the filing of bankruptcy, the trustee has a minimum of 60 days to redeem property for which the debtor has a right of redemption under state law.  11 U.S.C. § 108(b).  If the remaining original state law redemption period is longer than 60 days, § 108(b) allows a debtor to redeem the collateral for the time allowed under state law.

### The Debtor's Rights under Texas Law

Under Texas law, the Debtor has 60 days from the maturity date on each pawn ticket to pay the debt and recover the pledged goods governed by that pawn ticket.  TEX. FIN. CODE § 371.169(c) (1997).  After 60 days, Cash America was granted the option to designate the Property pawned by the Debtor as forfeited.  *Id*.  However, Texas law provides that, until Cash America exercises the option to enforce its lien and take the pledged Property as its own by documenting the forfeiture on the pawn ticket file or in the electronic records, the Debtor retains

the right to pay the amount financed and any charges accrued until the date of redemption, even if the 60-day period has expired.  7 TEX. ADMIN. CODE § 85.414.

In their briefs, neither the Debtor nor Cash America address whether Cash America took the final steps to exercise the option to take the pledged Property as its sole property.  To the contrary, Cash America simply argues that when the Debtor failed to timely redeem the Property, the Debtor's right of redemption was extinguished so that § 362 no longer applied since the estate no longer had any interest in the Property.  This argument incorrectly assumes that, by failing to pay the debt within 60 days after the filing of the petition, the Debtor's right to recover the Property terminated.

If the Debtor retained a right to recover the Property when he filed the bankruptcy petition, § 108(b) allows the Debtor to do so until the later of either 60 days after the filing of the petition or "the end of such period, including any suspension of such period occurring on or after the commencement of the case."  11 U.S.C. § 108(b).  "The end of such period" refers to the time under state law when the debtor may no longer exercise this right.  Thus, if the period available to a debtor when he files a petition exceeds 60 days, he is entitled to the remainder of such period.

As discussed above, Texas law extends a debtor's right to recover the pawned collateral indefinitely until the pledged goods have been taken as the pawnshop's own property.  In order for the pawnshop to obtain title to the pledged goods, it must take specific affirmative actions to transfer ownership in accordance with the regulations of the Texas Administrative Code.  7 TEX. ADMIN. CODE § 85.414.  Thus, under Texas law, when a debtor retains the right to pay a debt and recover pledged collateral at the time he files bankruptcy, this right continues until the pawnshop takes the final step to enforce its lien as required by Texas law.

Although 362(a) does not toll the running of the redemption period, it does stay any act to exercise control over property of the estate or to create, perfect, or enforce any lien against property of the estate.  11 U.S.C. § 362(a)(3)–(4).[9]  Under Texas law, it is unambiguous that a pawnbroker who lends money on the security of pledged goods is a secured party.  Tex. Fin. Code § 371.003 (1997).  Full title to pawned goods does not vest in a pawnshop, even when the 60-day grace period has expired, until the pawnshop acts to enforce its lien by taking specific actions required by the Texas Administrative Code.  7 Tex. Admin. Code § 85.414; *Murph*, 209 B.R. at 421, 423.[10]  Only § 108(b), and not § 362, tolls the running of a debtor's redemption

---

[9] Section 362(a) further stays any act to create, perfect, or enforce against property of the debtor any lien to the extent such lien secures a claim that arose before the bankruptcy proceeding.  11 U.S.C. § 362(a)(5).

[10] The United States District Court for the Eastern District of Texas utilized this reasoning to conclude that a debtor's redemption right was property of the estate even though the applicable 60-day state law grace period had expired pre-petition.  *Cash Am. Pawn, L.P. v. Murph*, 209 B.R. 419, 421 (E.D. Tex. 1997) (when the grace period remained open upon the bankruptcy filing, pawnshop was foreclosed from taking the final action to gain ownership of the pawned property because such action would violate § 362(a)(5)).  Nonetheless, the Court continued to reason that, pursuant to § 108(b), the debtor must exercise the right of redemption within 60 days or the debtor's interest in the property is extinguished:

> Thus, upon the filing of the bankruptcy petition, Debtors, or the trustee, had 60 days to redeem the property.  Having failed to exercise this right of redemption, full title would vest in Cash America Pawn once it made the applicable notation on its fourth record or electronically recorded the final forfeiture according to the regulations of the Texas Administrative Code.  However when the Debtors failed to exercise the right of redemption within the 60 days extension provided by § 108(b), they no longer had any legal or equitable interest in the collateral and it ceased to be part of the bankruptcy estate.  Appellants, at that point were not subject to the automatic stay provisions of 11 U.S.C. § 362(a) of the Bankruptcy Code as concerns the collateral.  Appellant Cash America was then free to make its notation pursuant to the regulations of the Texas Administrative Code.

*Id.* at 423.  This reasoning is inconsistent, apparently for the reasons set forth in the last paragraph of this footnote.  The Court in *Murph* describes that Texas law provides that pledged goods are the debtor's property until the pawnshop specifically enforces its lien by documenting the forfeiture, but that § 362(a) indefinitely precludes a pawnshop from taking such action.  The Court then disregards this provision under Texas law to find that upon expiration of 60 days the debtor automatically loses all interest in the property so that § 362(a) no longer precludes the pawnshop from taking the final step to enforce its lien.

Nevertheless, the *Murph* Court was faced with a stipulation of facts by the parties which stated that "all of these loans had a maturity date of thirty days from the date of the original pawn with a sixty day grace period after that."  *Id.* at 420.  Under Texas law, there is a *minimum* 60-day grace period, with an indefinite period thereafter.  However, the Court ruled in light of the parties' incorrect  stipulation.  This Court is not confronted with a similar, incorrect, stipulation.  Texas law does not have a definite date upon which the Debtor's rights terminated.

period.  Section 108(b) tolls the period for the longer of either 60 days or the remainder of the period under Texas law.  While the Debtor retains the right to pay the debt and recover the collateral, § 362(a) applies.  Under Texas law, a debtor's right to recover pledged goods does not terminate until Cash America takes the final step to transfer ownership of the Property and enforce its lien.

Enforcement of a lien violates § 362(a).  It is irrelevant that Cash America's lien was a possessory lien. Section 362(a) applies with equal force to secured parties in possession of collateral.  *See In re Mitchell*, 316 B.R. 891, 901 (S.D. Tex. 2004) (citing *United States v. Whiting Pools*, 462 U.S. 198, 204 (1983) ("The creditor with a secured interest in property included in the estate must look to [§ 363(e)] for protection, rather than to the nonbankruptcy remedy of possession)).

Accordingly, under Texas law (in this case made applicable by § 108), a debtor's right to pay the debt and recover the collateral exists indefinitely until (i) relief from the stay is granted to allow a pawnshop to enforce its lien; or (ii) the stay terminates by operation of law.

The Court recognizes that in other jurisdictions § 108(b) may generally limit a debtor's right of redemption to 60 days because applicable state law requires no affirmative act for title to pass to the secured creditor upon expiration of the redemption period.  Texas law requires a different result—Cash America must exercise the option to take the pledged goods as its property by documenting the forfeiture before the Debtor's right to recover the pledged goods terminates.

Because Texas law provides both that the Debtor retains an interest in the Property until the recording is made and that Cash America must make such notation before it takes the property as its own, the act is more than ministerial.  Such action is analogous to the filing of an affidavit or deed of foreclosure necessary to transfer title and finalize a foreclosure sale.  *See*,

*e.g.*, *In re Jones*, 37 B.R. 969, 974 (Bankr. N.D. Tex. 1984) (dictum) (post-petition filing of deed of trust violates the automatic stay); *In re Hoopai*, 2005 WL 2864748 (D. Haw. Oct. 14, 2005) (automatic stay precludes the filing of an affidavit of sale necessary to transfer title even when the actual sale occurred prior to bankruptcy); *In re Beeman*, 235 B.R. 519, 527 (Bankr. D. N.H. 1999) (mortgagee must obtain relief from § 362(a) before it may record a foreclosure deed and obtain title related to pre-petition sale); *see also In re Sabec*, 137 B.R. 659, 670 (Bankr. W.D. Mich. 1992) (automatic stay precludes a tax lien holder from filing a copy of a notice with the country treasurer as required by Michigan law before the debtor's redemption period will toll so that lienholder may obtain title).

Applying § 362(a) to preclude Cash America from taking the final step to enforce its lien does not alter any state created property rights. Texas law provides that a pawnshop retains no more than a security interest in the pledged goods until it documents the forfeiture of the goods in accordance with state law—this final act is required to divest the Debtor of his interest in the Property. Absent Cash America's pre-petition termination of the Debtor's rights in accordance with Texas law, Cash America's right to enforce its lien was subject to the provisions of § 362(a).

## Practical Effects

The Court is obliged to enforce the statute. Nevertheless, the Court will briefly address the practicalities of this result. Many pawn loans are for relatively small amounts. If every pawn transaction were permanently stayed by the automatic stay until the pawn lender obtained relief from the stay, the practical effect might be to impose a financial burden on pawn lenders disproportionate to the value of their collateral. However, the automatic stay expires without any

action by the pawn lender.  It expires, for example, when the debtor's case is dismissed or when a discharge is granted or denied.  11 U.S.C. § 362(c)(2).

If the debtor is in chapter 13, the debtor's plan must provide for payment in full of the value of the collateral, with interest.  11 U.S.C. § 1325(a)(5).

Accordingly, the holders of pawn liens are not left in a permanent state of limbo with their rights unprotected.  Instead, a brief stay is imposed.  If the stay remains effective beyond a brief period of time (as is the case in a chapter 13 bankruptcy), the lender receives payment over time like any other secured creditor.  The Court sees no reason why the pawn lender's rights should be different than those of any other secured creditor.  As the Supreme Court recently wrote:

> Thus, in cases like this involving secured interests in personal property, the court's authority to modify the number, timing, or amount of the installment payments from those set forth in the debtor's original contract is perfectly clear. Further, the potential need to modify the loan terms to account for intervening changes in circumstances is also clear: On the one hand, the fact of the bankruptcy establishes that the debtor is overextended and thus poses a significant risk of default; on the other hand, the postbankruptcy obligor is no longer the individual debtor but the court-supervised estate, and the risk of default is thus somewhat reduced.

*Till v. SCS Credit Corp.,* 541 U.S. 465, 475 (2004).

### Conclusion

If the Debtor's right to recover the pledged goods existed under Texas law when he filed his bankruptcy petition, then § 362(a) precludes Cash America from terminating the Debtor's interest in the Property.  The Court concludes that there is a colorable claim that Cash America violated § 362(a).  It remains to be seen whether the facts support the Debtor's position.

For the reasons stated above, Cash America's motion [docket no. 9] is denied without prejudice.

Signed at Houston, Texas, on March 31, 2006.

MARVIN ISGUR
United States Bankruptcy Judge